UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| AIMEE KERR, | § | |
|                 Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:19-cv-839-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
|                 Defendant. | § | |

## INTRODUCTION

Plaintiff Aimee Kerr ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act, and her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 13).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 8, 11. Plaintiff also filed a reply brief. *See* ECF No. 12. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 8) is **GRANTED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 11) is **DENIED**.

## BACKGROUND

Plaintiff protectively filed her applications for DIB on June 24, 2015. Transcript ("Tr.") 171. She filed her application for SSI on July 8, 2015.[1] Tr. 178. In both applications, Plaintiff

---

[1] The Court notes that the ALJ's decision erroneously recites that both applications were filed on July 23, 2015; Tr. 15, 25.

alleged disability beginning June 23, 2014 (the disability onset date),[2] due to: "(1) depression; (2) anxiety; (3) hypoglycemia; (4) cardioneurogenic syncope; (5) herniated disk in neck/lower back; (6) headaches/stomaches frequently; (7) asthma; (8) MTHFR clotting disorder; (9) chronically pees blood; (10) Epstein Barr; and (11) heat intolerance/allergic to metals." Tr. 171, 178 203. Plaintiff's claims were denied initially on September 14, 2015 (Tr. 80-81), after which she requested a hearing (Tr. 122). Administrative Law Judge William Weir (the "ALJ") presided over a hearing in Buffalo, New York, on February 12, 2018.  Tr. 15, 32. Plaintiff appeared and testified at the hearing and was represented by Jonathon Emdin, an attorney. *Id*. Stephen P. Davis, an impartial vocational expert ("VE"), also appeared and testified via telephone. *Id*.

The ALJ issued an unfavorable decision on July 27, 2018, finding that Plaintiff was not disabled. Tr. 15-25. On April 26, 2019, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's July 27, 2018 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations

---

[2] Plaintiff's date last insured for the Title II application was December 31, 2004, and the ALJ considered that as her disability onset date. Tr. 15-16.

2

omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II.     The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the

Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his July 27, 2018 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2004;

2. The claimant has not engaged in substantial gainful activity since December 31, 2004, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.);

3. The claimant has headaches, an anxiety disorder, a panic disorder, syncope, major depressive disorder, cervical and lumbar spine degenerative disc disease, and hip degenerative joint disease, each of which constitutes a severe impairment (20 CFR 404.1520(c) and 416.920(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(a) and 416.967(a)[3] except not more than simple repetitive 1-2 step tasks; she cannot perform complex work; she cannot work around unprotected heights, dangerous machinery, tools, or chemicals, and cannot work where temperature is not controlled;

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965);

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

4

7. The claimant was born on January 6, 1975 and was 29 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963);

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964);

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968);

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a);

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2004, through the date of this decision (20 CFR 404.1520(1) and 416.920(1)).

Tr. 15-25.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on June 23, 2015, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 25. The ALJ also determined that based on the application for supplemental security benefits protectively filed on June 23, 2015, the claimant is not disabled under section 1614(a)(3)(A) of the Act. *Id*.

## ANALYSIS

Plaintiff asserts three points of error. Plaintiff argues that the ALJ erred because: (1) he made his RFC determination using his own lay interpretation of the medical record (*see* ECF No. 8-1 at 18; (2) he improperly found Plaintiff's shoulder impairment non-severe (*see id*. at 23); and (3) he cherry-picked evidence of Plaintiff's cervical impairments (*see id*. at 27). The Commissioner responds that: (1) the ALJ's RFC finding is supported by substantial evidence in the record; (2) the ALJ had no obligation to further develop the record; and (3) Plaintiff has not met her burden of proving that her RFC is more restricted than that found by the ALJ. *See* ECF No. 11-1 at 8-21.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77. For the reasons set forth below, the Court finds that the ALJ erred in failing to obtain any opinion evidence from an acceptable medical source and formulated Plaintiff's physical RFC based on his own interpretation of the medical record.[4] This error necessitates remand for further administrative proceedings as set forth below.

As noted above, the ALJ determined that Plaintiff retained the RFC to perform a reduced range of light work as defined in 20 C.F.R. 404.1567(b), 416.967(b), but with the noted non-exertional limitations. Tr. 20. A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all the relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Thus, "the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in [his] decision," because he is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citation omitted) (summary order). However, an ALJ is not a medical

---

[4] The Court notes that Plaintiff only raises arguments with respect to record development and the physical RFC finding, and does not challenge the ALJ's finding with respect to Plaintiff's mental and other physical impairments. See ECF No. 8-1 at 18-29.

6

professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F.Supp.3d 581, 586 (W.D.N.Y. 2018) (quotation omitted).

Accordingly, "[a]n ALJ is prohibited from 'playing doctor' in the sense that an ALJ may not substitute his own judgment for competent medical opinion. . . . This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC." *Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (citations omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Benman v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d 252, 257 (W.D.N.Y. 2018) (quoting *Dennis v. Colvin*, 195 F.Supp.3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted)).

"While in some circumstances, an ALJ may make an RFC finding without treating source opinion evidence, the RFC assessment will be sufficient only when the record is 'clear' and contains 'some useful assessment of the claimant's limitations from a medical source.'" *Muhammad v. Colvin*, No. 6:16-cv-06369(MAT), 2017 WL 4837583, at *4 (W.D.N.Y. Oct. 26, 2017) (citation omitted). In other words, "the ALJ may not interpret raw medical data in functional terms." *Quinto*, 2017 WL 6017931, at *12 (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F.Supp.2d 908, 911-13 (N.D. Ohio 2008)). Here, the ALJ did not rely on any treating source opinion evidence in determining Plaintiff's RFC. Therefore, the issue is whether the record is clear, and contains some useful assessment of Plaintiff's limitations from a medical source sufficient to support the RFC finding. *Muhammad*, 2017 WL 4837583, at *4. Having reviewed the record, the Court finds that it is neither clear nor complete and does not contain a useful assessment of Plaintiff's physical limitations.

7

In this case, the ALJ cites no opinion evidence in assessing Plaintiff's physical RFC. Tr. 15-25. As noted by the Commissioner, the record here contains approximately 1,000 pages of medical records, including treatment notes from Plaintiff's physicians, chiropractors, physical therapists, and massage therapists, as well as several radiological reports. *See* ECF No. 11-1 at 8-9. While the Commissioner is correct about the size of the record, very few treatment records with respect to Plaintiff's musculoskeletal complaints were cited in the ALJ's decision. And to the extent such were cited, the decision does not clearly reflect what pieces of the evidence the ALJ chose to incorporate into the physical RFC for light work, or why those pieces were chosen. Nor, as described below, is it apparent that the RFC formulated here is supported by the medical evidence in the record, given the lack of medical opinion evidence with respect to Plaintiff's musculoskeletal impairments and any physical limitations arising therefrom.

Plaintiff was involved in a motor vehicle accident in January 2015, where her parked car was hit by a plow truck. Tr. 21, 332. She reported neck and back pain, and on examination, gait was antalgic. Tr. 330-31. Lumbar x-rays revealed moderate disc space narrowing with mild spurring at L5-S1 and spondylosis. Tr. 336. She was discharged with Flexeril and Tylenol. Tr. 335. Plaintiff complained of neck pain from her car accident and underwent a cervical MRI on March 20, 2015. Tr. 320. There was spondylosis and disc space narrowing; small to moderate left disc herniation; narrowing; and facet and uncovertebral hypertrophy with mild bilateral foraminal stenosis at C5-6. Tr. 320. Plaintiff also complained of low back pain radiating to her legs, more severe on the right. Tr. 318. A lumbar MRI on March 24, 2015 revealed severe disc desiccation with disc space narrowing and endplate degenerative changes at L5-S1. Tr. 318. There was also a small broad-based herniation. Tr. 318.

Plaintiff began treating at Greater Buffalo Accident and Injury Chiropractic on April 13, 2015. Tr. 1144. She reported constant headaches, neck pain and stiffness, upper back pain, reduced

thoracic movement, constant low back pain, and radiating pain with stiffness in the right thigh and calf. Tr. 1146. William Owens, D.C. ("Dr. Owens") noted that Plaintiff was "at an overall status of acute pain," and he opined that Plaintiff's headaches were likely cervical. Tr. 1145. On examination, palpation revealed a "severe degree of[ ]muscular contraction" in the trapezius, semispinalis, supraspinatus, latissimus, multifidus, and sacrospinous. Tr. 1148. There was pain with palpation, and soft tissue swelling from C1 to L5. *Id*. Soto-Hall, distraction, shoulder depression, cervical compression, and upper limb tension tests of the cervical spine were all positive. *Id*. Lilac compression, Lasegue, and Kemp's tests of the lumbar spine were likewise positive. Tr. 1149. Muscle spasms and trigger points were noted, and Plaintiff's range of motion remained restricted. Tr. 1149-50. Although Dr. Owens opined that Plaintiff was totally temporarily disabled (Tr. 1151), the final responsibility for deciding Plaintiff's residual functional capacity is reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Plaintiff reported minimal changes through April 2015. Tr. 1151-56. Plaintiff continued to follow up with Dr. Owens through late July 2015, again reporting minimal changes in her pain and symptoms. Tr. 1173. The record reflects that Plaintiff also received massage therapy from April to December 2015. Tr. 940-1039.

During an orthopedic follow-up at Pinnacle Orthopedic and Spine Specialists on July 29, 2015, Plaintiff reported low back and neck pain with radiation to her shoulders and right lower extremity. Tr. 1072. She also reported occasional paresthesias in the right hand. Tr. 1072. She reported some relief with chiropractic care. Tr. 1073. On examination, she had no difficulty standing from a seated position and was able to walk with a normal gait. *Id*. Both cervical and lumbar paraspinal musculature tenderness were noted. *Id*. Range of motion, cervical extension, and lumbar flexion were reduced. Tr. 1073-74. James Hurd, PA-C ("PA Hurd") recommended epidural steroid injections before any surgery. Tr. 1074.

Plaintiff treated at Monroe Chiropractic on January 3, 2017. Tr. 885. She reported pain in the cervical region, the neck, and upper thoracic pain. Tr. 885. Pain was frequent and aggravated by weight bearing. *Id*. She reported difficulty reaching overhead, lifting, and bending over. *Id*. On examination, spinal subluxations were present at C1 to C7. *Id*. There was hypertonicity with mild tenderness in the cervical and thoracic paraspinals and moderate tenderness in the levator scapula muscle. Tr. 885. Plaintiff missed several therapy sessions in November and December 2016 and followed up on January 4, 2017. Tr. 751. She followed up on January 9, 2017 reporting right shoulder discomfort, noting her cervical and hip symptoms were minor. Tr. 751.

The ALJ discussed Plaintiff's automobile accident and noted that Plaintiff's course of treatment for neck, back, and hip pain was relatively conservative. Tr. 21. He noted that Plaintiff primarily treated with chiropractic care from 2015 through late 2017 and attended physical therapy on an inconsistent basis from October 2016 through May 2017. Tr. 21 (citing Tr. 740-64) (indicating several missed physical therapy appointments during this period)). The ALJ further noted that Plaintiff generally saw her primary care providers and chiropractors during this period. Tr. 21. He also noted that Plaintiff intermittently visited spine specialist Zair Fishkin, M.D., Ph.D. ("Dr. Fishkin"), in July 2015, October 2016, January 2017, and February 2017. Tr. 21, 1046-53, 1059-62, 1072-75. The ALJ noted that Dr. Fishkin recommended non-operative care for Plaintiff's back and neck pain, consisting of chiropractic adjustments, massage therapy, physical therapy, NSAIDs, and Neurontin. Tr. 21 (citing Tr. 1046-53, 1059-62, 1072-75).

The ALJ also noted that Plaintiff consulted with hip specialist Graham R. Huckell, M.D. ("Dr. Huckell") in October 2016, and that he too recommended physical therapy and NSAIDs for hip pain. Tr. 21 (citing Tr. 1065). The record also reflects that Plaintiff treated with physiatrist/pain management specialists Cheryl R. Hart, M.D., ("Dr. Hart"), Mikhail Strut, M.D. ("Dr. Strut"), and Karen Pellicore. FNP-C ("NP Pellicore"), of RES Physical Medicine and Services, in October

10

2017, November 2017, and January 2018, receiving intraligamentous injections in her cervical and upper thoracic spine. Tr. 1188-1205. The ALJ noted that Plaintiff reported improvement in her pain after these injections. Tr. 22. Dr. Strut, NP Pellicore, and Dr. Hart opined Plaintiff was "unable to work" in several treatment notes. Tr. 1191, 1195, 1200, 1205.

The ALJ also discussed Plaintiff's neurological evaluation with Alexander Rovner, M.D. ("Dr. Rovner") in January and February 2018. Plaintiff reported that pain interrupted her sleep, and she frequently had difficulty falling asleep because of the neck pain or back pain. Tr. 1230-31. She also reported that she developed throbbing headaches associated with nausea and light sensitivity a couple times a week. *Id*. As the ALJ noted, Plaintiff's physical examination was primarily within normal limits (*e.g.*, intact sensory, normal gait, and full 5/5 strength in all extremities). Tr. 22 (citing Tr. 1232). However, Dr. Rovner also noted tenderness at the L5-S1 level on the right and bilateral muscle spasm in the lumbar paraspinal muscle region. Tr. 1232. Although the ALJ remarked that Dr. Rovner recommended Migralief even though a a CT scan of Plaintiff's head showed no intracranial abnormality (Tr. 22), Dr. Rovner's note makes clear that Migralief was recommended as a "post[-]traumatic prophylaxis," *i.e.*, to prevent migraines. Tr. 1232.

The Commissioner appears to argue that because the ALJ discussed the treatment records as outlined above, and because "the record contains hundreds of pages of treatment notes from several different medical sources and other objective medical evidence," this means the ALJ's RFC finding was supported by substantial evidence. *See* ECF 11-1 at 8-10. However, the ALJ does not explain how this evidence contributed to his assessment of Plaintiff's physical limitations. While the record may be "voluminous" as the Commissioner argues (*see id*. at 10), the record contains no assessment or opinion from any examining source whatsoever regarding what Plaintiff can and cannot do. Thus, the ALJ's failure to adequately explain his reasoning is particularly

significant in this case, where there is no medical opinion in the record as it relates to Plaintiff's physical limitations.

Although the ALJ cited Plaintiff's unremarkable findings and conservative treatment as support for his assessment that Plaintiff had the RFC for light work, the ALJ ignored other portions of the record that indicated abnormal findings such as ongoing pain, reduced range of motion, swelling, muscular contraction, muscle spasms, myospasms, trigger points, reduced range of motion, tenderness, and hypertonicity. Tr. 395, 838, 706, 746, 772, 816, 855, 883, 940-1039, 1042, 1051, 1055, 1068, 1060, 1073-74, 1148-49, 1151-56, 1190, 1202- 03. r. 22. Although the ALJ stated there were "no treating or examining physicians who opined that [Plaintiff] is unable to work" (Tr. 22), as noted above, Dr. Strut, NP Pellicore, and Dr. Hart opined Plaintiff was "unable to work" in several treatment notes. Tr. 1191, 1195, 1200, 1205. In any case, the ALJ did not assign controlling weight to weight to any opinion in assessing Plaintiff's physical functioning.

Generally speaking, it is the function of the ALJ, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir.1983); *see also* 20 C.F.R. § 404.1520b(b) (An ALJ has discretion to resolve evidentiary inconsistencies.); *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 113 (2d Cir. 2010). However, the ALJ's selective assessment of Plaintiff's musculoskeletal treatment does not convince the Court that he fully reviewed and considered her treatment records. *See Veley v. Colvin*, No. 1:13-CV-01204 (MAT), 2016 WL 8671963, at *7 (W.D.N.Y. Jan. 29, 2016) (citing *Nix v. Astrue*, 2009 WL 3429616, *6 (W.D.N.Y. Oct. 22, 2009) (noting that an ALJ may not engage in a "selective analysis of the record" and "may not ignore an entire line of evidence that is contrary to [his] findings") (internal quotation marks omitted)).

In this case, the evidence cited by the ALJ did not provide the necessary explanation of Plaintiff's functioning, nor was it specific enough for the ALJ to determine that Plaintiff could perform light work, without medical opinion evidence. *See Nanartowich v. Comm'r of Soc. Sec. Admin.*, No. 17-CV-6096P, 2018 WL 2227862, at *11–12 (W.D.N.Y. May 16, 2018) (quoting *Gross v. Astrue*, No. 12-CV-6207P, 2014 WL 1806779, at *18 (W.D.N.Y. May 7, 2014)) ("As a general rule, where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations . . . , to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing." ). The ALJ should have done so here.

Based on the foregoing, the Court does not find there was substantial evidence to support the ALJ's RFC determination that Plaintiff was capable of light work with restrictions and is left without a clear indication of how the ALJ reached the RFC determination without resorting to impermissible interpretation of raw medical data. Accordingly, the Court finds that, to fulfill his responsibility to develop a complete record, the ALJ should recontact Plaintiff's treating sources, order a consultative examination, or have a medical expert testify at the hearing.

Because the Court has already determined, for the reasons discussed above, that remand of this matter for further administrative proceedings is necessary, the Court need not address Plaintiff's second and third points of error. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted*); Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 WL 2137776, at *28 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis

may change on these points upon remand"), *adopted*, \*261 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is **GRANTED**, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 11) is **DENIED**, and this matter is **REMANDED** to the Commissioner for further administrative proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

**IT IS SO ORDERED**.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE